

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

KTF:AJS
F. #2026R00540

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 13, 2026

<u>By E-mail</u>

The Honorable Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

> Re:   United States v. Wilson Martinez
>        Case No. 26-MJ-153

Dear Judge Kuo:

The government respectfully submits this letter seeking the pretrial detention of Wilson Martinez ("Martinez"), whose initial appearance on a complaint is scheduled before Your Honor this afternoon. The defendant is charged, along with defendant Jonathan Arboleda ("Arboleda"), with possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The charges stem from a July 21, 2026 mid-day shooting in a bodega in Brooklyn, New York in which Martinez walked into the bodega and immediately fired shots at Arboleda, who then proceeded to fire shots back as a gunfight erupted in the store. As set forth in more detail below, particularly in light of the violent and brazen conduct in this case and the substantial evidence against him, Martinez poses both a significant danger to the community and a risk of flight, and thus should be detained pending trial.

I.    <u>Background</u>

On or about July 21, 2026, at approximately 1:40 PM, New York City Police Department ("NYPD") officers responded to reports of multiple shots fired at Soto Mini Market Corp, a bodega store located at 333 Crescent Street, Brooklyn, New York. Upon arrival, NYPD officers observed Arboleda on the corner of Glen Street and Crescent Street with gunshot wounds to his right arm and right abdomen. Arboleda was then transported to Jamaica Hospital to be treated for his injures.

Law enforcement conducted a review of surveillance footage within the bodega and in the surrounding areas, which showed that at approximately 1:30 pm, two black men walked from around the block and entered the bodega. One of the males was wearing a blue sweatshirt and black pants, while the other male, later identified as Martinez, was wearing a

white tee shirt, dark colored pants, and white and blue sneakers.  Immediately after entering the store, Martinez pulled out a firearm from his waist area and extended his arm, firing shots at Arboleda from close range, as shown in the photographs below:

 

As Arboleda began to bleed from his right arm and abdomen, he ran to the back area of the store, while Martinez chased after him.  Arboleda then fired shots back at Martinez from the back of the store; the surveillance footage, a still of which is depicted below, shows a visible muzzle flash and smoke from Arboleda's gun.  Martinez and the male wearing the blue sweatshirt left the store and Martinez fled eastbound on Glen Street.  Arboleda then walked back towards the front of the store while holding a silver firearm and bleeding from his right arm. Arboleda dropped the firearm onto the floor and then picked the firearm up again while walking out of the store, as shown in the photograph below.

2

 

After exiting the store, Arboleda walked into the middle of the street and raised his firearm, pointing it in the direction of a silver Lexus that Martinez was leaving the scene in. Law enforcement officers submitted videos and photographs of the vehicle used by Martinez to law enforcement databases. The vehicle was identified in law enforcement databases as registered to Martinez. Shortly after the shooting, NYPD crime scene officers recovered one Blazer 9mm Luger caliber shell casing on the floor of the bodega near the front entrance, consistent with where Martinez fired his gun.

Law enforcement was able to confirm Martinez's identity as the initial shooter by reviewing photographs in law enforcement databases and comparing them to the security footage described above. Additionally, as detailed in the complaint, law enforcement conducted an interview of a witness who identified Martinez as the initial shooter at the scene and provided his phone number, which was found to be registered in Martinez's name.

Martinez has three prior felony convictions, including: (1) a June 19, 2009 conviction for unlawful trafficking in scheduled drugs, in violation of Maine Criminal Code 17-A M.R.S. § 1103(1-A)(A), a Class B felony for which he was sentenced to a term of imprisonment of eighteen months; (2) a January 17, 2006 conviction in Kings County Supreme Court for criminal possession of a loaded firearm in the third degree, in violation of New York Penal Law §265.02, a Class D Felony for which he was sentenced to a term of imprisonment of three years; and (3) a March 25, 2005, conviction in Kings County Supreme Court for robbery in the third degree, in violation of New York Penal Law § 160.05, a Class D Felony, for which he was sentenced to 5 years of probation.

3

Additionally, Martinez has been sentenced to multiple additional terms of incarceration for parole violations related to his conviction for criminal possession of a loaded firearm. He was also sentenced to a term of one-to-three years incarceration for violating probation related to his third-degree robbery conviction.

For these acts, Martinez is charged by complaint with possession of ammunition by a convicted felon. Martinez was arrested yesterday pursuant to a warrant issued in connection with the complaint in this case.

II.    Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., the government may move for detention based on the defendant's dangerousness and/or risk of flight in certain cases, including when the defendant's pending charges involve a crime of violence, 18 U.S.C. § 3142(f)(1)(A),[1] when they involve the possession or use of a firearm, id. at § 3142(f)(1)(E), and/or when they involve a serious risk that the defendant will flee, id. at § 3142(f)(2)(A). After a detention hearing, a court must detain the defendant if it determines that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" Id. at § 3142(e).

A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); see also United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

The Bail Reform Act directs that four factors be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993). As to flight, strong evidence of guilt creates an incentive to flee, United States v. Zhang, 55 F.4th 141, 146 (2d Cir. 2022), as does the possibility of a severe sentence, see Jackson, 823 F.2d at 7.

Under the Bail Reform Act, the government may proceed by proffer at a detention hearing and the rules of evidence do not apply at the hearing. See Ferranti, 66 F.3d at 542.

---

[1]    The Second Circuit has held that being a felon in possession constitutes a crime of violence. United States v. Dillard, 214 F.3d 88, 94 (2d Cir. 2000) (felon-in-possession of a firearm is a crime of violence); United States v. Watkins, 940 F.3d 152, 163 (2d Cir. 2019) (felon-in-possession of ammunition is a crime of violence).

4

III.	The Defendant Should Be Detained

For the reasons described below, no combination of bail conditions will reasonably assure Martinez's appearance and the safety of the community, such that this Court should enter a permanent order of pretrial detention as to Martinez.

First, the charged conduct is serious, as is the danger posed by the defendant's release.  Martinez has multiple felony convictions, including convictions for drug trafficking, criminal possession of a loaded firearm, and robbery in the third degree.  As clearly captured by multiple surveillance cameras in the area, Martinez committed a brazen shooting in broad daylight by entering the store and immediately firing a gun at Arboleda from point-blank range. Not only did Martinez put Arboleda's life in danger by shooting him from close range in an attempt to murder him, but he put the lives of countless innocent civilians danger, including two bodega store employees who were within feet of Arboleda when Martinez entered and started shooting.  In fact, surveillance footage shows that one of the bodega employees was standing behind Arboleda at the time of the initial shooting, directly in the line of fire of Martinez's 9mm bullets.  Additionally, it appears that Martinez planned this attack in advance, as he slowly and deliberately walked from around the block with the firearm concealed on his person before opening the front door of the bodega and engaging in the shootout.  Given the caliber of the round (9mm shell casing), Arboleda and the many innocent bystanders in the vicinity of the bodega could have easily been killed.

Amplifying the danger that Martinez's release would pose is the unknown location of the 9mm firearm that Martinez fired, despite law enforcement's diligent efforts to find it.  The unknown whereabouts of Martinez's firearm pose a danger to the public that would only be increased should Martinez be released on bond and potentially have access to it. Furthermore, Martinez was seen entering the bodega with another individual at the time of the shooting, and that individual has not yet been located.  There is no reason to believe the dispute between Martinez and Arboleda or their associates has been resolved.  Martinez's release thus poses the threat of another shooting occurring.

Second, the government's evidence of the defendant's crime is strong. It includes, among other things, surveillance footage showing Martinez arrive at the scene, walk into the bodega, pull out the firearm, and shoot Arboleda from point-blank range.  It also includes surveillance footage of Arboleda shooting back at Martinez and Martinez fleeing the store and driving away from the scene in a silver Lexus that was later identified by law enforcement as being registered in Martinez's name.  A witness also identified Martinez as the initial shooter at the scene.

The defendant's history and characteristics further demonstrate that he is both a danger to the community and a serious risk of flight.  Martinez has multiple convictions dating back to 2005, including convictions for unlawful trafficking in scheduled drugs, criminal possession of a loaded firearm, robbery in the third degree, and criminal possession of a controlled substance.  Martinez has also shown a complete disregard for judicial authority and conditions imposed on him, repeatedly violating the terms of his parole and probation for his past convictions and being sentenced to numerous terms of incarceration for doing so.

As for risk of flight, Martinez fled the scene of the crime and was only apprehended after diligent efforts by law enforcement, including the issuance of a cell site warrant to determine his cell phone's location.  Furthermore, the defendant appears to have criminal ties to Maine based on his car being registered there and his participation in a narcotics conspiracy there.  Martinez also faces a lengthy term of imprisonment; possession of ammunition by a convicted felon has a statutory maximum penalty of up to 15 years' imprisonment.  He also faces additional penalties under the sentencing guidelines based on the fact that he attempted to murder Arboleda and did in fact cause serious bodily injury when shooting Arboleda from close range.  The possibility of a severe sentence increases his risk of flight.  See United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the defendant]'s Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."); see also United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee.").

IV.    Conclusion

Considering all these factors, including the risk that Martinez would commit another violent crime if released and his significant incentives to flee in light of the weight of the evidence and the sentence he could face if convicted, the government respectfully requests that the Court enter a permanent order of detention.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/ Andrew Stamboulidis
       Andrew Stamboulidis
       Assistant U.S. Attorney
       (718) 254-6009

cc:    Clerk of the Court (PK) (by email)
       Counsel of Record (by email)